**Edward & Debora DAVENPORT**

v.

**COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF PUBLIC WELFARE, Court of Common Pleas of Bucks County and Edward Sparkman, Trustee.**

**Civ. A. No. 88–3177.**
**Bankruptcy No. 87–2395F.**
**Adv. No. 87–0737F.**

United States District Court,
E.D. Pennsylvania.

July 29, 1988.

David A. Searles, Community Legal Services, Philadelphia, Pa., for Edward Davenport and Debora Davenport.

Mary B. Seiverling, Dept. of Public Welfare, Harrisburg, Pa., for Com. of Pa., Dept. of Public Welfare.

John D. Blumenthal, Asst. County Sol., Doylestown, Pa., Michael A. Klimpl, for Court of Common Pleas of Bucks County.

## MEMORANDUM AND ORDER

SHAPIRO, District Judge.

Before the court is an appeal from a Bankruptcy Court Order discharging certain criminal restitution payments due from appellees Edward and Debora Davenport by Order of the Court of Common Pleas of Bucks County, Pennsylvania. 83 B.R. 309 (1988).

On September 17, 1986, the Davenports both entered pleas of guilty to welfare fraud in the Court of Common Pleas of Bucks County. They were each sentenced to one year probation and ordered to pay $208.00 per month in restitution to the Bucks County Adult Probation and Parole Department ("Probation Department") until a total of $4,144,80 was repaid. Upon receipt of restitution payments, the Probation Department was to forward the payments to the victim of the crime, Pennsylvania Department of Public Welfare ("DPW"), who would share repayments with the federal government in accordance with 62 P.S. § 474. However, the Davenports never made any restitution payments.

On May 13, 1987, the Davenports filed a joint petition under Chapter 13 of the Bankruptcy Code. They listed the restitution obligation as an unsecured amount owed to the DPW.

On July 2, 1987, the Probation Department notified the Davenports that a pre-violation hearing would be held August 6, 1987. On July 20, 1987, counsel for the Davenports informed the Probation Department of the bankruptcy filing and requested that the parole violation charges be withdrawn. The Probation Department refused and held a pre-violation hearing on August 6, 1987, at which Mrs. Davenport appeared with counsel.

On August 12, 1987, the Davenports filed an adversary complaint in Bankruptcy Court to determine if their original restitution obligations were dischargeable. On October 20, 1987, the Bankruptcy Court confirmed the Davenports Chapter 13 plan; the plan provided for payment of the restitution obligations imposed by the Bucks County Court of Common Pleas. On October 26, 1987, the Bankruptcy Court held a hearing on the adversary complaint. On October 29, 1987, the Bucks County Court of Common Pleas held a violation of probation hearing. The violation charge was dismissed, but the Davenports were ordered to pay full restitution within three years. In an opinion dated March 8, 1988, the Bankruptcy Court determined that the restitution payments ordered by a state court as part of a criminal sentence were dischargeable in a Chapter 13 proceeding and that all restitution obligations imposed by the Bucks County Court of Common Pleas would be discharged by compliance with the Chapter 13 plan approved by the Bankruptcy Court. This appeal followed.

In accordance with the United States Supreme Court's opinion in *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), and as stated in the well-reasoned opinion of Judge Gawthrop in *Commonwealth v. Johnson–Allen*, 88 B.R. 659 (E.D.Pa.1988), the court holds that the Bankruptcy Code does not authorize discharge of state-imposed criminal restitution in a Chapter 13 bankruptcy.

Allowing a federal bankruptcy court to discharge a financial obligation imposed by a state court as an alternative punishment for crime would conflict with important policies of federalism. *See Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed. 2d 669 (1971). The decision to impose a particular punishment involves a weighing of various goals of the state criminal justice system. *See Kelly*, 479 U.S. at 49, 107 S.Ct. at 360, 93 L.Ed.2d at 228. Sometimes the particular punishment (*e.g.*, restitution payments to the victim of the crime) will have a concomitant private benefit for the victim of crime. Despite this private benefit, criminal restitution benefits, unlike civil obligations, involve vindication of fundamental public interests. *See Id.* 479 U.S. at 48–49, 107 S.Ct. at 360, 93 L.Ed.2d at 227 ("The right to formulate and enforce penal

**430**

sanctions is an important aspect of the sovereignty retained by the States.").

Although criminal restitution payments made to the court as ordered may be forwarded to the DPW or other victim of crime, the amount of payments is ordered by the court and is discretionary with the court in light of the circumstances. In Pennsylvania, no victim has the right to recover restitution directly through the criminal process, whatever the entitlement to civil recovery. If criminal restitution payments eventually inure to the victim, the restitution is an incidental private benefit received in the implementation of public goals of punishment, deterrence and rehabilitation.

■ If a criminal restitution obligation can be discharged by filing a Chapter 13 petition, courts would be reluctant to impose restitution as a criminal penalty and might opt for periods of incarceration instead. It is essential that state courts are able to impose penal sanctions other than incarceration without fear that a federal court will render this punishment nugatory after the fact. Congress did not state any express intention to the contrary. Whatever the rationale and merit of the views of the Bankruptcy Court as cogently analyzed by Judge Fox, we do not write on a clean slate. In view of the direction given by the Supreme Court in *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), until Congress acts or reacts, this court must reverse.