In re Dale A. MANTELLI, Debtor.

Shari Diane BABITZKE, formerly known as Shari Diane Mantelli, Appellant,

v.

Dale A. MANTELLI and Lloyd W. Wilson, Trustee, Appellees.

BAP No. EC–91–2149 ROP.
Bankruptcy No. 988–00784.
Adv. No. 990–0045.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Submitted on Briefs Sept. 16, 1992.

Decided Jan. 19, 1993.

Michael F. Babitzke, Stockton, CA, for Shari Diane Babitzke.

Lloyd W. Wilson, Stockton, CA, trustee.

Before RUSSELL, OLLASON and PERRIS, Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge:

The bankruptcy court held that the debtor's payment made pursuant to a civil contempt order was a voidable preference under 11 U.S.C. § 547[1]. We AFFIRM.

### I. FACTS

Debtor/Appellee Dale Mantelli ("Mantelli") and Appellant/Creditor Shari Babitzke ("Babitzke"), formerly husband and wife, executed a marital settlement agreement which was made a part of their divorce decree. Pursuant to the agreement, Mantelli was to occupy the residence until sold, and while occupying it, retain possession of certain household items and other personal property items that belonged to Babitzke. The agreement stated that Mantelli was not to dispose of, tamper with, alter or move any of these items out of the residence. On July 10, 1987, an order was entered incorporating these provisions.

Mantelli violated the terms of the stipulated domestic relations order, thereby causing damage to Babitzke in the amount of $3830.00. Rather than suing for a judgment on the claim for damages, Babitzke brought a motion before the San Joaquin County Superior Court charging Mantelli with violating the provisions of the agreement, alleging that Mantelli damaged the subject property. After a hearing, the Superior Court found Mantelli in contempt for violating the July 10, 1987 order and causing damages in the amount of $3,830.00.

The Superior Court ordered that "Mantelli be jailed for a period of five (5) days, which jail sentence shall be stayed on the condition that he pay the sum of $3,830.00."

After the order was orally issued in court, but before its entry, Mantelli paid Babitzke the sum of $3,830.00. Mantelli filed a bankruptcy petition on March 22, 1988, approximately 45 days after the time when he made the payment to Babitzke.

The Trustee, on behalf of the Mantelli bankruptcy estate, filed an action to avoid the $3,830.00 payment to Babitzke as a voidable preference under § 547. A trial was held, and the bankruptcy court found in favor of the Trustee, finding that the payment was a voidable preference. Babitzke appeals. We affirm.

### II. ISSUE

Whether the bankruptcy court erred in holding that the debtor's payment of $3,830.00, made pursuant to a state court civil contempt order in lieu of serving a five day jail sentence, is a voidable preference under 11 U.S.C. § 547.

### III. STANDARD OF REVIEW

■ At issue is the interpretation of § 547 which is a question of law. The bankruptcy court's conclusions of law are reviewed *de novo*. *In re Bronner*, 135 B.R. 645 (9th Cir.BAP 1992); *In re Pacific Far East Lines, Inc.*, 889 F.2d 242, 245 (9th Cir.1989); *In re McNutt*, 87 B.R. 84, 85 (9th Cir.BAP 1988).

### IV. DISCUSSION

*The Requisite Elements of a Preferential Transfer Have Been Established and No Exceptions Apply.*

Babitzke challenges the preference avoidance on three grounds: 1. The payment was not made to or for the benefit of a creditor on account of an antecedent debt; 2. The payment would not enable Babitzke to receive more than she would receive had the transfer not been made; 3.

---

**1.** Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* and to the Federal Rules of Bankruptcy Procedure, Rules 1001 *et seq.*

**156**

The payment falls within the contemporaneous exchange for new value exception to preference avoidance.

The statutory requirements for avoiding a preferential transfer under § 547 are:

**§ 547. Preferences.**

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and·

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547.

In her brief, Babitzke concedes subsections (3) and (4), that Mantelli was insolvent at the time of transfer and that the transfer was made within 90 days of the filing of bankruptcy.

A. *Babitzke is a Creditor Within the Meaning of the Code.*

■ Babitzke argues that she was not a "creditor" as defined by the Code because the contempt order did not give Babitzke a "right to payment." While Babitzke is correct that she could not have forced Mantelli to pay the $3830.00 based upon the contempt order, she overlooks that she had a

$3830.00 claim as a result of the damages caused by Mantelli's acts. Under the contempt order Mantelli had the option of either serving five days in prison or satisfying Babitzke's $3830.00 claim. He chose the latter.

■ Even if the debtor's payment of the $3,830.00 were in the nature of "restitution," the Supreme Court in *Penn. Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 557–560, 110 S.Ct. 2126, 2129–2131, 109 L.Ed.2d 588 (1990), has recognized that restitution constitutes a "debt" within the meaning of § 101(12) and is a "claim" within the meaning of § 101(5)(A).

Section 101(10)(A) defines "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor...." Section 101(5) defines a "claim" as a:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured....

■ From the exhaustive definition above it is clear that the intent of Congress was that a "claim" should be defined broadly, encompassing even a contingent right to payment. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess., at 309–310 (1977); S.Rep. No. 989, 95th Cong., 2d Sess., at 22–23 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787.

B. *The $3,830.00 paid by the debtor was not a debt for restitution.*

■ The Debtor, citing *In re Nelson*, 91 B.R. 904, 906 (N.D.Cal.1988), argues that the $3,830.00 was restitution and criminal restitution payments cannot be avoidable preferential transfers. *Nelson*, which involved payment of restitution as part of a criminal sentence is inapposite to the issue of whether a payment made pursuant to a civil contempt order can be a preference [2]. Respect for state court criminal proceed-

---

**2.** We do not decide whether sums paid pursuant to a criminal restitution judgment can be avoid-

ed as preferences because that issue is not presented in this appeal.

ings, which was at the heart of the decision in *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), is not implicated in a civil proceeding. Here "there are no penal sanctions, criminal judgments, nor continuing prosecutions with which § 547 could potentially interfere...." *In re Car Renovators*, 946 F.2d 780, 783 (11th Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1949, 118 L.Ed.2d 553 (1992).

The effect of the civil contempt order is not invalidated by preference avoidance because the offender is still required to fully comply with the court order. Who ultimately receives the money paid, Babitzke or the estate, is of no consequence to the offender. The effect to Mantelli is the same: pay or go to jail.

There is no textual basis in § 547 to insulate restitution paid pursuant to a civil contempt order from preference avoidance. We decline to read into the Code what Congress has not provided.

C. *Babitzke Received More Than She Would Have Had the Transfer Not Been Made Under the Distributive Provisions of the Code; Nondischargeability is Irrelevant.*

■ Babitzke argues that the payment satisfied a nondischargeable debt and is therefore not a voidable preference under § 547(b)(5) because she did not receive more than she would receive had the transfer not been made. Babitzke incorrectly reasons that because her claim would[3] be nondischargeable under § 523(a)(7), she would receive the full amount irrespective of the debtor's discharge. As Babitzke argued in her brief: "If the payment had not been made, the Appellant could have still collected said money by means of an action to find that the debt was non-dischargeable." We disagree with this reasoning.

The relevant inquiry is not whether Babitzke could receive more by being able to compel collection against the debtor on a nondischargeable debt. Rather, it is whether Babitzke would receive more un-

der the *distributive* provisions of the Code than she would receive absent any transfer:

> [T]he transfer must enable the creditor to whom or for whose benefit it was made to receive a greater percentage of his claim than he would receive under the distributive provisions of the bankruptcy code. Specifically, the creditor must receive more than he would if the case were a liquidation case, if the transfer had not been made, and if the creditor received payment of the debt to the extent provided by the provisions of the code.

S.Rep. No. 989, 95th Cong., 2d Sess., at 87–89 (1978) *reprinted in* 1978 U.S.C.C.A.N. 5787, 5873. Whether Babitzke can compel collection from the debtor after a determination of nondischargeability is a far different inquiry than the question of how much she would receive upon the distribution of the estate pursuant to the priorities specified by the Code under § 726. Nondischargeability is simply not at issue under § 547(b)(5).

D. *The Contemporaneous Exchange Exception Does Not Apply on These Facts.*

■ Babitzke argues that the transfer was a contemporaneous exchange for new value, falling within the exception to preference avoidance found in § 547(c). She argues that the "new value" exchanged was the value of avoiding five days of incarceration for the $3,830 payment. We disagree.

The contemporaneous exchange exception of § 547(c) provides in pertinent part:

> (c) The trustee may not avoid under this section a transfer—
>
> (1) to the extent that such transfer was
>
> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

---

**3.** This is a separate question which is not the subject of this appeal. Because it is not before us, we express no opinion on the merits of a nondischargeability action.

158

(B) in fact a substantially contemporaneous exchange;

11 U.S.C. § 547(c). Bankruptcy Code § 547(a)(2) defines "new value" as follows:

"New value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation;

11 U.S.C. § 547(a)(2).

We fail to see how the avoidance of incarceration fits within the above definition of new value. What was received by the debtor Mantelli was a stay of a five-day jail term, not "money or money's worth in goods, services or new credit, or release by a transferee of property previously transferred ..." as specified in § 547(a)(2). Nothing listed within that definition even resembles the avoidance of incarceration. As Babitzke concedes, no cases were found holding that a cash payment in exchange for a waiver of incarceration is a transaction within the exception to preference.

## V. CONCLUSION

Preference avoidance of a state court civil restitution payment offends none of the policy concerns raised by the Supreme Court in *Kelly*. The bankruptcy court did not err in finding that a preferential transfer occurred. Accordingly we AFFIRM.