In re Colleen REEVES, Debtor.

John SMITH; CLS Mortgage, Inc., Appellants,

v.

Colleen REEVES, Appellee.

BAP No. EW–93–1646–ROJ.

Bankruptcy No. 92–02744–K13.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 22, 1994.

Decided March 14, 1994.

J.T. Janecek, Spokane, WA, for CLS Mortg.

Bruce R. Boyden, Spokane, WA, for Colleen L. Reeves.

Before RUSSELL, OLLASON and JONES, Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge:

This appeal arises from an order confirming the debtor's Chapter 13 [1] plan which modified the rights of a lender whose note

---

1. Unless otherwise indicated, all Chapter, Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. and to the Federal Rules of Bankruptcy Procedure, Rules 1001 et seq.

was secured by a deed of trust on the debtor's principal residence. We REVERSE and REMAND.

## I. FACTS

In May 1984, the debtor, Colleen Reeves, ("Reeves"), granted a first deed of trust on her residence to appellants, John Smith and CLS Mortgage ("lenders"). The deed of trust was executed to secure a $40,000 promissory note signed December 22, 1983. The money was not used to purchase the home, but was used for other purposes.

Under the terms of the note secured by the deed of trust, Reeves was to pay monthly interest payments of $600.00 commencing January 22, 1984 at eighteen percent interest with the entire principal due in one year. However, Reeves made interest only payments from January 22, 1984 to October 22, 1991. The note by its own terms had already fully matured.

In February 1992, a notice of default was filed and recorded by the lenders. A trustee's sale originally scheduled for July 24, 1992 was postponed pending a possible sale of the property by Reeves. However, the sale by Reeves did not materialize, and another trustee's sale was scheduled for September 18, 1992. This trustee's sale was also postponed as Reeves filed a Chapter 13 petition on the morning of September 18, 1992. The balance due on the note, as of the date of her petition, was $51,515.48.

Reeves proposed, in her Chapter 13-plan, to pay the lenders holding the deed of trust the balance due on the note in monthly installments over five years. The lenders objected to Reeves' plan stating that the plan was in violation of § 1322(b)(2) and was not filed in good faith pursuant to § 1325(a)(3). The lenders also filed a motion for relief from the automatic stay since Reeves conceded that her inability to pay the deed of trust·in full would render the proposed plan unconfirmable.

The bankruptcy court held that the plan was proposed in good faith and § 1322(b)(2) was not applicable. The bankruptcy court's order confirming the plan was entered June 1, 1993. The bankruptcy court also denied the lenders' motion for relief from the automatic stay. The lenders timely filed a notice of appeal.

## II. ISSUE

Whether § 1322(b)(2) is applicable to a short term loan secured by the debtor's primary residence where the loan was not used to purchase the debtor's primary residence.

## III. STANDARD OF REVIEW

A bankruptcy court's interpretation of a statute is reviewed *de novo*. *In re Quintana*, 915 F.2d 513, 515 (9th Cir.1990); *In re Mantelli*, 149 B.R. 154, 155 (9th Cir. BAP 1993). Whether § 1322(b)(2) applies to short term mortgages requires statutory interpretation. *In re Rubottom*, 134 B.R. 641, 643 (9th Cir. BAP 1991).

## IV. DISCUSSION

Section § 1322(b)(2) provides in pertinent part:

(b) Subject to subsections (a) and (c) of this section, the plan may—

. . . . .

(2) modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence* . . . .

11 U.S.C. § 1322(b)(2) (emphasis added).

Reeves argues this short term, non-purchase money home loan is not one that was contemplated by Congress and should be excepted from § 1322(b)(2). We disagree.

Statutory construction begins with the plain language of the Code. *Estate of Cowart v. Nicklos Drilling Co.*, — U.S. —, —, 112 S.Ct. 2589, 2593, 120 L.Ed.2d 379, 388 (1992); *Patterson v. Shumate*, — U.S. —, —, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519, 526 (1992); *In re Mitchell*, 977 F.2d 1318, 1320 (9th Cir.1992).

Section 1322(b)(2) makes no distinction between short term and long term loans or types of lenders. *See In re Seidel*, 752 F.2d 1382 (9th Cir.1985) (Chapter 13 plan that modified a short term loan violated § 1322(b)(2)); *In re Rubottom*, 134 B.R. at

644 (§ 1322(b)(2) applies to junior lienholders). Moreover, § 1322(b)(2) does not contain a purchase money requirement.

A similar situation involving long term and short term debt was discussed in *Union Bank v. Wolas*, — U.S. ——, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991). The Court in *Wolas* granted certiorari to resolve a conflict among the circuits regarding preferential transfers under § 547(c)(2).

Section § 547(c)(2) provides that the trustee may not avoid a transfer:

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms;

11 U.S.C. § 547(c)(2).

The respondent in *Wolas* argued that the ordinary course of business exception provided in § 547(c)(2) was limited to short term debt. The Court, however, held that payments on long term debt, as well as short term debt, qualified under § 547(c)(2).[2] *Id.* at ——, 112 S.Ct. at 533, 116 L.Ed.2d at 524.

The Court noted "the most significant feature of subsection (c)(2) that is relevant to this case is the *absence* of any language distinguishing between long-term and short-term debt." *Id.* at ——, 112 S.Ct. at 530, 116 L.Ed.2d at 520 (emphasis added). Furthermore, "[t]he fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning." *Id.* at ——, 112 S.Ct. at 531, 116 L.Ed.2d at 522.

In that vein, Reeves' debt obligation to the lenders clearly falls within the scope of § 1322(b)(2). First, the lenders' note was secured solely by Reeves' personal residence. Second, Reeves' plan impermissibly modified lenders' rights by extending the maturity date of their loan by five years. *See In re Harlan*, 783 F.2d 839, 840 (9th Cir.1986) (postponing payment of a debt beyond the original date contemplated by the parties is a modification of the lender's rights and violates § 1322(b)(2)).

Even though this debt obligation stems from short term financing which was not used to purchase the principal residence, we hold that § 1322(b)(2) is applicable since the note was secured solely by Reeves' personal residence.

## V.  CONCLUSION

A five year delay in repayment of a loan secured by the debtor's principal residence is a modification of the lenders' rights. This modification is inconsistent with § 1322(b)(2) and therefore the order confirming the Chapter 13 plan must be REVERSED. In light of this decision, we REMAND this matter for reconsideration of the lenders' motion for relief from the stay.

2. *See Wolas*, — U.S. at ——, 112 S.Ct. at 534, 116 L.Ed.2d at 525 (Scalia, J., concurring) ("It is regrettable that we have a legal culture in which such arguments have to be addressed ... with respect to a statute utterly devoid of language that could remotely be thought to distinguish between long-term and short-term debt.").