In re Peter LEE; Ken Ota, Debtors.

HALL–MARK ELECTRONICS CORPORATION, Appellant,

v.

Charles E. SIMS, Trustee, Appellee.

No. 95–15791.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 16, 1996.

Decided March 4, 1997.

Timothy H. Hopkins, Hopkins & Carley, San Jose, California; Charles M. Tatelbaum, Johnson, Blakely, Pope, Bokor, Ruppel & Burns, Clearwater, Florida, for appellant.

Michael C. Fallon, Michael Ahern, Law Office of Michael C. Fallon, Santa Rosa, California, for appellee.

Before: CANBY and FERNANDEZ, Circuit Judges, and KING,* District Judge.

## OPINION

CANBY, Circuit Judge.

Hall–Mark Electronics Corporation appeals the Bankruptcy Appellate Panel's ("BAP") decision that a transfer by cashier's check of $100,000 from the partnership of Peter Lee and Ken Ota ("the Debtor") to Hall–Mark was a preferential transfer. Hall–Mark appeals the BAP's rejection of Hall–Mark's "new value defense" to preferential transfer under 11 U.S.C. § 547(c)(4). We affirm.

## BACKGROUND

Hall–Mark regularly supplied electronic parts to the Debtor. On September 11, 1992, the Debtor gave Hall–Mark a personal check for $100,000 as payment for parts that the Debtor previously had received. Hall–Mark deposited the check on September 14, 1992. Hall–Mark continued to ship parts to the Debtor until September 21, 1992. On September 23, 1992, the bank dishonored the personal check because the check lacked a dual signature. The Debtor did not then attempt to validate the personal check, but instead, on September 25, 1992, delivered to Hall–Mark a cashier's check for $100,000.

The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on December 24, 1992. The Debtor had delivered the cashier's check to Hall–Mark within ninety days of the filing of the bankruptcy petition. The Trustee accordingly filed a complaint to recover the $100,000 as a preferential transfer under 11 U.S.C. § 547(b).

Hall–Mark defended on the ground, inter alia, that the Trustee was precluded from avoiding the transfer because Hall–Mark had given "new value" by continuing to ship goods to the Debtor after the transfer. See § 547(c)(4). To succeed in that argument, Hall–Mark had to establish that the relevant date of "transfer" was the date that the Debtor delivered its first, personal check, and not the date it delivered the cashier's check. The bankruptcy court rejected Hall–Mark's defense, ruling that the transfer occurred with the delivery of the cashier's check on September 25, 1992, and that no new value had been given by Hall–Mark after that date. The BAP affirmed in a published opinion, *Hall–Mark Elec. Corp. v. Sims,* 179 B.R. 149 (9th Cir. BAP 1995), and Hall–Mark appeals.[1]

## ANALYSIS

To understand the issue presented by this appeal, one must be aware that what constitutes a "transfer" under one subsection of § 547 does not necessarily constitute a transfer under a different subsection. Under the general preference provision, § 547(b), a transfer of the debtor's property is avoidable if, among other requirements, it was made "on or within 90 days before the filing date of the petition." The Supreme Court has held that, for purposes of this subsection, a transfer accomplished by means of an ordinary check takes place not on the day the check is delivered, but on the day it is honored by the payee bank. *Barnhill v. Johnson,* 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992).

There is no dispute in the present case about the application of this rule. The Debtor's personal check, delivered more than 90 days prior to the filing of the petition in

---

*The Honorable George H. King, United States District Judge for the Central District of California, sitting by designation.

1. We review decisions of the BAP de novo. *In re Alsberg,* 68 F.3d 312, 314 (9th Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 1568, 134 L.Ed.2d 667 (1996).

bankruptcy, was never honored. Accordingly, the Debtor's transfer to Hall–Mark did not occur for purposes of § 547(b) until it delivered the cashier's check to Hall–Mark.[2] That delivery occurred within 90 days prior to the filing of the petition in bankruptcy, so the payment is presumptively a preference. Hall–Mark does not contend otherwise.

A different rule for time of transfer applies, however, under the "new value" exception of § 547(c)(4), which provides that the Trustee may not avoid a transfer under § 547 "to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor." The purpose of the new value exception, like that of the other § 547(c) exceptions, is to encourage creditors to continue to deal with troubled debtors without fear that they will have to disgorge payments received for value given. *In re Gold Coast Seed Co.*, 30 B.R. 551, 553 (9th Cir. BAP 1983); see *Barnhill*, 503 U.S. at 402 & n. 9, 112 S.Ct. at 1391 & n. 9 (referring to similar purposes of §§ 547(c)(1) and (2)). If creditors continue to deal with a troubled debtor, it is possible that bankruptcy will be avoided altogether. *See In re IRFM, Inc.*, 52 F.3d 228, 232 (9th Cir.1995). To serve this purpose, those circuits that have dealt with the question have held, with varying qualifications, that a transfer occurs for purposes of § 547(c)(4) on the date when an ordinary check is delivered to the creditor, not when the check is subsequently honored by the drawee. *See, e.g., Matter of Kroh Bros. Development Co.*, 930 F.2d 648, 650–51 & n. 3 (8th Cir.1991); see also *Barnhill*, 503 U.S. at 402 n. 9, 112 S.Ct. at 1391 n. 9. The creditor is therefore protected, at least to some degree, in treating a check like a cash payment and in conferring new value upon the debtor without waiting for the check to clear.

Hall–Mark seeks to bring itself within this rule by contending that the Debtor's transfer to it should be deemed to have occurred on September 11, 1992, when the Debtor delivered its ordinary check to Hall–Mark. Hall–Mark continued to deliver goods to the Debtor until September 21, thereby conferring new value on the Debtor's estate.

Hall–Mark's argument faces one insuperable barrier: it is flatly inconsistent with our decision in *In re Wadsworth Building Components, Inc.*, 711 F.2d 122, 123 (9th Cir.1983). In *Wadsworth* we agreed that, for purposes of § 547(c)(4), delivery of a check constitutes a transfer, but with a condition that is not met here: "if a transfer is in the form of a check and if the check is not honored within ten days from execution ..., then the transfer is made when the check is honored by the drawee bank." *Id.* at 123 (citing § 547(e)(2)(A), (B) to the effect that a transfer is made at the time it takes effect between the parties if the transfer is perfected within ten days of that time); see also *In re Wolf & Vine*, 825 F.2d 197, 200–01 (9th Cir.1987) (clarifying and distinguishing *Wadsworth*).[3] In this case, the Debtor's personal check was *never* honored. Its delivery therefore cannot have served as a transfer under *Wadsworth.* The later delivery of the cashier's check was unquestionably a transfer, but no new value was given after the date it was delivered to Hall–Mark.

Hall–Mark argues that the purposes of § 547(c)(4) would be served by permitting the payment by cashier's check to relate back to the date of delivery of the subsequently-dishonored personal check. Hall–Mark relies on the only case, so far as we know, that

---

**2.** As the BAP pointed out, a cashier's check is accepted upon issuance. Once the Debtor delivered the cashier's check, it had no right to stop payment, and Hall–Mark had a claim against the issuing bank which had already accepted the check. Thus the transfer of property occurred upon delivery of the check. *Hall–Mark*, 179 B.R. at 161–62.

**3.** In *Wolf & Vine*, we held that delivery of a check is a transfer for purposes of the "contemporaneous exchange" exception to preferences established by § 547(c)(1), so long as the check is honored within a reasonable time, which we established as 30 days. *Id.* at 201–02. We distinguished but left intact our holding in *Wadsworth* that required the check to be honored within ten days for purposes of § 547(c)(4). In the present case, the BAP erroneously stated that the Debtor's check would have had to be honored within a reasonable time, rather than within ten days, for purposes of § 547(c)(4). This inadvertent error, however, had no effect on the outcome of the BAP's decision.

has ever held a transfer to occur for purposes of § 547(c) upon delivery of a check that was subsequently dishonored. In *In re Philadelphia Light Supply Co.*, 33 B.R. 734 (Bankr.E.D.Pa.1983), the drawee bank had erroneously dishonored a check because of a stop payment order that had been rescinded. After returning the check, the bank corrected its mistake by wiring the funds to the presenter. The bankruptcy court held that the "new value" defense applied for goods supplied after delivery of the check, because those goods had been furnished in return for the debtor's express agreement to make the check payment on its account. *Id.* at 739.

However much such a flexible result may serve the purposes of § 547(c)(4), we conclude that it cannot be reconciled with *Wadsworth* or with the principles of transfer by check underlying that decision. *Wadsworth* denied a relation back when the debtor's check was honored too late. *Wadsworth*, 711 F.2d at 123. We hardly can permit a relation back when the Debtor's check was never honored, and a separate payment was substituted for it, also too late. In addition, the theory upon which delivery of a check may be considered a transfer under § 547(c) is that a check that is honored within the requisite period of time is the equivalent of a cash payment. *See In re Standard Food Services, Inc.*, 723 F.2d 820, 821 (11th Cir.1984). If the check is dishonored, no cash-equivalent payment is deemed to have occurred and the parties are left in a credit relationship. *See id.* Hall–Mark accordingly was left in the same position as any other creditor who had not been paid and who continued to supply goods or services to the Debtor on credit. To permit a separate, later payment by cash or cashier's check to relate back to the date of delivery of the dishonored check would open the door to endless manipulation.

## CONCLUSION

We conclude, therefore, that the BAP did not err in ruling that no transfer of the Debtor's property occurred at the time of delivery of the subsequently-dishonored ordinary check. The BAP correctly ruled that § 547(c)(4) did not protect Hall–Mark because Hall–Mark furnished no new value af-

ter the preferential transfer, which occurred upon delivery of the cashier's check. The decision of the BAP is

**AFFIRMED.**